Eastern District of Kentucky
FILED
JUN 22 2018
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 17-98-HRW

KELLY DISHMAN, *Individually and as*
*Administratrix of the Estate of* EDWIN DISHMAN,
and
A.D., *a minor child*
*by and through Custodian and Next Friend*
MARY DISHMAN,                                                    PLAINTIFFS,

v.            MEMORANDUM OPINION AND ORDER

CORRECT CARE SOLUTIONS, LLC,
GERRICA DYE,
ONA BROWN,
and SHARON BRAMEL,                                               DEFENDANTS.

This matter is before the Court upon Defendants Correct Care Solutions, LLC, Gerrica Dye, Ona Brown and Sharon Bramel's Motion to Dismiss [Docket No. 14]. The matter has been fully briefed by the parties [Docket Nos. 14-1, 18 and 19]. For the reasons set forth herein, the Court finds that the Complaint fails to state a claim upon which relief can be granted against these Defendants.

**I.**

This case arises from the suicide of Edwin Dishman while he was incarcerated at the Eastern Kentucky Correctional Complex ("EKCC"). The facts alleged in the Complaint are as follows: In 2016, Edwin Dishman was remanded to custody in connection with a state imposed criminal sentence. [Complaint, Docket No. 1, ¶ 20]. He was initially housed at Roederer

Correctional Complex ("RCC"), an adult prison facility operated by the Kentucky Department of Corrections ("KDOC"). *Id.*

As part of the classification process, Dishman completed a KDOC Mental Health Appraisal Self-Report form in March, 2016, on which he stated that he had attempted suicide in 2005 by hanging and had a history of depression and "nervous trouble." He had been the victim of physical or sexual abuse. *Id.* at ¶¶ 21-23.

Less than two months later, Dishman requested behavioral health services. He notified an unidentified individual at RCC "that he has a history of PTSD and that he was struggling with open wing [housing] and would like a 2-man cell." *Id.* at ¶ 25.

Two days after Dishman's request, prison authorities at RCC transferred him to a 2-man cell. *Id.* at ¶ 26. The next day, on May 26, 2016, he was prescribed an antidepressant, Celexa, and Benedryl. *Id.* at ¶ 27. Shortly thereafter, in June or early July, however, stopped taking his medications. *Id.* at ¶ 28.

Dishman reported to sick call on July 7, 2016, but, again, stopped taking his medications approximately one week later. *Id.* at ¶ 29 ( he "stopped taking his medication for a two week period prior to psychiatric services on August 1, 2016") (he "returned after stopping Celexa for two weeks").

The following month, Dishman was transferred to KCC. Prior to his transfer, on August 23, 2016, Correct Care Solutions ("CCS") employee Sharon Bramel, LPN, prepared a Nursing Medical Assessment Transfer form and noted that Dishman was on psychotropic medications. The assessment did not include the purpose for which those medications were prescribed. *Id.* at ¶ 30.

2

The following day, KDOC transferred Dishman to EKCC. *Id.* at ¶ 31. As part of the intake process at EKCC, CCS employee Gerrica Dye, LPN, asked him questions about his mental health history. She recorded his answers on a Transfers/Intake: Mental Health Screening form. *Id.* Included among the questions, and Mr. Dishman's responses, were:

> Q. History of suicide attempts?
> A. No.
> Q. Being treated, currently, for any Mental Health Problems?
> A. Yes
> Q. History of inpatient/outpatient psychiatric treatment?
> A. No.
> Q. Any history of sexual-victimization or sexually predatory behavior?
> A. No.

*Id.* at ¶ 31.

Under the disposition portion of the form, LPN Dye reported, "[Dishman] presents as capable of functioning in general population without mental health services." *Id.*

Two weeks after the transfer, on September 7, 2016, Dishman attempted suicide by hanging in a dorm bathroom. *Id.* at ¶ 32. Although health care providers were ultimately able to resuscitate him, his injuries were such that he was removed from life support the next day and he passed away soon thereafter. *Id.* at ¶ 37.

Kelly Dishman, his wife and Administratrix of his estate, and A.D., his minor child, by and through Mary Dishman, his mother, filed this lawsuit against CCS, three of its employees, the Kentucky Department of Corrections and several of its employees, pursuant to 42 U.S.C. § 1983, alleging that they violated Dishman's Eighth Amendment rights. They also allege state law claims for negligence, gross negligence, outrageous conduct, wrongful as well as loss of spousal and parental consortium. [*Id.* at ¶¶ 41-63]. Plaintiffs seek to recover compensatory and

punitive damages. *Id.* at ¶¶ 65-66. The KDOC and its employees were dismissed from the case. [Docket Nos. 7, 8 and 9].

CCS and its employees, Gerrica Dye, Ona Brow and Sharon Bramel seek dismissal of the claims asserted against them.

## II.

Dismissal of a complaint is warranted under Fed.R.Civ.P. 12(b)(6) if it fails to state a claim upon which relief can be granted. In scrutinizing a complaint under Rule 12(b)(6), the Court is required to "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir.2007). A complaint need not contain "detailed factual allegations". However, it must allege more than "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint will withstand a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A complaint has "facial plausibility" if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir.2009) (quoting Iqbal, 129 S.Ct. at 1949).

"Conclusory assertions, e.g., that...[the] defendants engaged in 'outrageous' and 'unlawful' behavior...are insufficient to state a claim that is plausible on its face." *Ogle v. Columbia Gas Transmission, LLC*, 513 Fed.Appx. 520, 522-523 (6th Cir. 2013). The "complaint must contain either direct or inferential allegations respecting all material elements to sustain a

4

recovery under some viable legal theory." *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (internal citation omitted). As the Sixth Circuit stated in *Bishop*:

> [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice. Even under Rule 12(b)(6), a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. (internal citations omitted) The factual allegations must be enough to raise a right to relief above the speculative level; they must state a claim to relief that is plausible on its face.

*Bishop*, 520 F.3d at 519 (internal citations omitted) (emphasis original). *See also Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434 (6th Cir. 1988)(holding that "more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements.")

### III.

The gravamen of Plaintiffs' complaint is violation of the Eighth Amendment. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Id.* at 835 (*quoting Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834 (6th Cir.2002).

To rise to the level of an Eighth Amendment violation, a prison official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." *Id.* at 837–38.

Thus, the standard for a claim of deliberate indifference has both a subjective and objective component. *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir.2001). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Broyles v. Corr. Med. Servs.*, 478 F. App'x 971, 975 (6th Cir.2012) (*quoting Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir.1994)). "[T]he subjective intentions of prison authorities must be demonstrated by objective manifestations of such intent, and cannot be proved by factually unsupported, conclusory opinions of the court or of the prisoners or their representatives." *United States v. Michigan*, 940 F.2d 143, 154 n. 7 (6th Cir.1991). In examining deliberate indifference to medical needs, the Sixth Circuit has stated:

> Officials may be shown to be deliberately indifferent to such serious needs without evidence of conscious intent to inflict pain. However, the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.

*Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d at 660 (citations omitted). " 'It is obduracy and wantonness, not inadvertence or error in good faith, that characterize' " deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

The objective component of an Eighth Amendment deliberate-indifference claim requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir.2005). The objective component is governed by "contemporary standards of decency." *Hudson*

6

*v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 9 (citations omitted).

It is well established that prisoners are not entitled to "unqualified access to health care." *Id.* Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir.1976). Mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference. *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir.1996).

### A.   Plaintiffs fail to state a claim against CCS upon which relief can be granted.

"It is clear that a private entity which contracts with the state to perform a traditional state function, such as providing medical services to prison inmates, may be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993). Therefore, the analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against CCS.

CCS cannot be held responsible for a constitutional deprivation unless there is a direct causal link between its policies or customs and the alleged constitutional deprivation. *Street v. Corr. Corp. of Am.*, 102 F.3d at 818; *see also Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir.2001) ("CMS's [Correctional Medical Systems, Inc.,] liability must be premised on some policy that caused a deprivation of [plaintiff's] Eighth Amendment rights.").

Accordingly, to state a viable claim against CCS, Plaintiffs must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because

7

of the execution of that policy." *Garner v. Memphis Police Dep't,* 8 F.3d 358, 363–64 (6th Cir.1993). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability" of the entity under § 1983. *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994) (*quoting Polk Cnty. v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (citation omitted)).

Noticeably absent from the Complaint is an identification of which policies or practices CCS promulgated or violated that evince a deliberate indifferent to Dishman's needs. Merely alleging that CCS violated unknown policies or customs is not enough to state a claim, much less, establish liability.

Instead, Plaintiffs allege various theories of CCS' liability, to-wit, *respondeat superior*, failure to properly hire and/or train its employees, and failure to promulgate "appropriate operating policies and procedures ... to protect the constitutional rights of arrestees/inmates like Edwin Dishman." [Docket No. 1, ¶¶ 9 and 19]. The Court will address each theory in turn.

First, "[u]nder § 1983, there is no *respondeat superior* or vicarious liability." *Flagg v. City of Detroit,* 715 F.3d 165, 174 (6th Cir. 2013) (citing *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 122 (1992)). Accordingly, this claim fails as a matter of law.

With regard to supervisory liability, such as failure to properly hire or train its employees, Plaintiffs must demonstrate that CCS acted with deliberate indifference as to its known or obvious consequences. "A showing of simple or even heightened negligence will not

suffice." *Doe v. Patton*, 381 F. Supp. 2d 595, 601 (E.D. Ky. 2005) (internal quotation marks and citation omitted), *aff'd sub nom. Doe v. Magoffin Cty. Fiscal Court*, 174 F. App'x 962 (6th Cir. 2006). "[A] finding of culpability [for negligent hiring] cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this particular* officer was highly likely to inflict *this particular* injury suffered by the plaintiff." *Id.* (emphasis added). *See also Smith v. City of Troy, Ohio*, 874 F.3d 938, 947 (6th Cir. 2017); *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997) ("To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.").

In their Complaint, Plaintiffs have not alleged any facts to supports its allegation in this regard. The Complaint is silent as to as who CCS purportedly hired in error, the position for which the individual was hired, how that individual violated Dishman's Eighth Amendment rights or how the individual's background made it "plainly obvious" that hiring that individual would result in the particular constitutional harm. The absence of these facts is fatal to Plaintiffs' claim.

Similarly, Plaintiffs assert a failure to supervise and train theory of liability against CCS but, again, fail to allege facts supporting such a claim. "A supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016). In other

words, "at a minimum, [that] the plaintiff must show that the defendant at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.*

Plaintiffs' Complaint merely contains a conclusory allegation that CCS "knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved" the alleged unlawful conduct. However, Plaintiffs do not allege any facts regarding the specific alleged misconduct, the employee(s) who purportedly committed the misconduct, how CCS knew or should have known of the abuse, or how CCS ratified or otherwise acquiesced in it.

As for CCS' alleged failure to promulgate adequate policies, the Complaint is devoid of any allegations identifying the allegedly deficient policy, how existing policies and procedures are inadequate or otherwise place inmates' serious medical needs at risk, or CCS' awareness of the deficiency in existing policy and the risk it posed. As such, Plaintiffs' Complaint fails to adequately state a plausible claim for relief under this theory.

The Complaint fails to satisfy *Twombly* because it does not contain any facts which state a claim to relief against CCS that is plausible on its face. The complaint is barren of any "facts" to support the claims asserted against CCS. The complaint merely asserts CCS is at fault and the Court is left to speculate as to what that conclusory allegation means.

**B.     Plaintiffs fail to state a claim against CCS' employees in their official capacities upon which relief can be granted.**

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent,'" these claims are merely duplicative of those

10

asserted against CCS. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Therefore, because Plaintiffs' claims against CCS cannot be maintained, their claims against its individual employees, in their official capacities, fail as well.

C.  **Plaintiffs fail to state a claim against CCS' employees in their individual capacities upon which relief can be granted.**

   i.  **Plaintiffs have not sufficiently plead conspiracy.**

In their Complaint, Plaintiffs allege that the Defendants engaged in a conspiracy to deprive Dishman of his Eighth Amendment rights.

Civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir.1985). In order to survive 12(b)(6) scrutiny, Plaintiffs must allege: (I) the existence of a single plan; (ii) that the co-conspirators shared in a general conspiratorial objective; and (iii) an overt act in furtherance of the conspiracy that caused injury to the plaintiff[s]." *Id.* at 771.

Plaintiffs contend that they do, in fact, allege the elements of conspiracy and point the Court to paragraphs 20 through 40 of their Complaint. However, an examination of that portion of the Complaint, as well as a thorough review of all paragraphs of the Complaint, reveals that there are no facts alleged which purport to establish the existence of a plan shared by the co-conspirators. The only allegations which come within spitting distance of properly alleging a conspiracy are set forth in paragraph 19:

11

> Defendants, individually and in conspiracy with one another, engaged in the conduct described below under color of the law of the Commonwealth of Kentucky. The individual Defendants named above knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved the conduct described below.

[Docket No. 1, ¶ 19].

These are precisely the kind of vague and conclusory allegations prohibited by *Twombly*, *Iqbal* and their progeny. Neither in this paragraph nor elsewhere in their Complaint do Plaintiffs allege facts that would establish *any* of the elements of civil conspiracy, *i.e.*, a) that CCS (or any of its agents) entered into an agreement to deprive inmates of adequate mental health care; b) a shared conspiratorial objective to do so; or c) an overt act, allegedly taken by CCS or others, to further the claimed conspiracy. Plaintiffs' conspiracy claim is legally insufficient. *See Lyttle v. Farley*, No. 6:16-114-KKC-HAI, 2017 WL 3431394, at *4 (E.D. Ky. Aug. 9, 2017) (granting dismissal of conspiracy claim where plaintiff did "nothing but make blanket assertions about the existence of a conspiracy ... [without alleging how plaintiffs] were involved in his prosecution or how they coordinated with others to pressure witnesses or to carry out any other act.").

### ii. Plaintiffs have not sufficiently plead any claims against Sharon Bramel.

Aside from vague assertions that Sharon Bramel was involved in a conspiracy, discussed *supra*, the allegations in the Complaint pertaining to her are: she is an LPN, an employee of CCS, and a member of the medical staff at Roederer Correctional Complex who is responsible for providing and/or assisting in providing medical treatment to inmates at Roederer and she was aware of KDOC's policies and practices regarding suicidal individuals and individuals with serious medical needs [Docket No. 1, ¶ 17]; she prepared the Nursing Medical Assessment

12

Transfer form at RCC, and indicated on the form that Dishman was on psychotropic medications but did not include the purpose" for those medications. *Id.* at ¶ 30.

These allegations do not amount to a sustainable claim against Bramel. Although it is unclear from the Complaint, Plaintiffs' charge Bramel for her alleged failure to identify the underlying mental health condition that prompted Dishman's prescription for psychotropic medications. However, that contention, without more, is not enough to properly state a claim against her. The standard, discussed as it pertains to CCS *supra*, requires not only deliberate indifference to a prisoner's medical needs but also an awareness the consequences of such indifference. "[T]he proper inquiry concerning the liability of a City and its employees in both their official and individual capacities under section 1983 for a jail detainee's suicide is: whether the decedent showed a *strong likelihood* that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent's serious medical needs." *Perez v. Oakland Cty.*, 466 F.3d 416, 433 (6th Cir. 2006) (emphasis added). Even where the facts alleged establish deliberate indifference "to a real, even a substantial risk of suicide," it will nonetheless be insufficient where the evidence does not establish that the defendant "was aware of a *strong likelihood* of suicide and acted with deliberate indifference to *that* very high level of risk." *Id.* at 433-34 (emphasis added).

Here, there is simply no allegation concerning Bramel's awareness of a substantial risk of Dishman committing suicide, much less a strong likelihood of that possibility. Nor do Plaintiffs allege that she intentionally omitted Dishman's self-reported history of attempted

13

suicide from the form, that the form had a place to record such information, or that she erroneously recorded information on the form. There is not even an allegation that but-for the omission of information from the Transfers/Intake: Mental Health Screening form regarding the "purpose" for Dishman's psychotropic medications, that he would not have attempted suicide. This is noteworthy, given that Plaintiffs concede that Dishman, despite being prescribed psychotropic medications, twice stopped taking the medication while at RCC and upon transfer to EKCC, Dishman provided different answers than those he provided at RCC regarding his medical history of attempted suicide. [Docket No. 1, ¶¶ 28-30, 21-23 and 31]. Plaintiffs also concede that Bramel did, in fact, record Dishman's prescription for psychotropic medications on the Nursing Medical Assessment Transfer form. Thus, even construing Plaintiffs' Complaint in the light most favorable to them, their Complaint fails to state a cause of action against Bramel.

### ii. Plaintiffs have not sufficiently plead any claims against Gerrica Dye.

Similarly, Plaintiffs' allegations against Gerrica Dye, in her individual capacity, consist merely of allegations that she is an LPN employed by CCS, a medical staff member at EKCC, and is aware of KDOC's policies and practices regarding suicidal individuals; that she prepared the Transfers/Intake: Mental Health Screening for Plaintiff at EKCC, and that she "indicated under disposition, 'presents as capable of functioning in general population without mental health services.'" *Id.* at ¶ 31.

As with Bramel, Plaintiffs have failed to allege facts regarding Dye's conduct to sufficiently state any claim against her. Specifically, there is no allegation that Dye's impression of Dishman as "capable of functioning in general population without mental health services"

14

was not reasonably reflective of Dishman's presentatuon at that time or of her professional judgment. Nor is there any allegation that Dye was subjectively aware of a strong likelihood of Dishman committing suicide and that she nonetheless disregarded that risk. Also absent are allegations concerning any specific policies Dye allegedly violated.

Without much more detail, the allegations are legally insufficient to state a cause of action against Dye.

### iii. Plaintiffs have not sufficiently plead any claims against Ona Brown.

Plaintiffs' Complaint is totally devoid of specific factual allegations regarding Ona Brown's alleged conduct. Rather, Plaintiffs' Complaint merely alleges that she is a CMT, employed by CCS, a member of the medical staff at EKCC who is responsible for providing and/or assisting in providing medical treatment to inmates at EKCC and aware of KDOC's policies and practices regarding suicidal individuals and individuals with serious medical needs. *Id.* ¶ 12. Plaintiffs fail to allege *any* conduct by Defendant Brown relating to Dishman or his medical treatment.

In their response to Defendants' dispositive motion, Plaintiffs maintain that they have "clearly" alleged facts sufficient to establish all their claims against Defendants [Docket No. 18, pg.4]. However, as Defendants point out, merely saying the allegations are clear does not make them so. Rule 12(b)(6) jurisprudence requires Plaintiffs to plead non-conclusory facts that manifest plausibility. Plaintiffs have wholly failed in this regard. Their Complaint, at best, presents the dots but fails to connect them. As such, it does not pass *Twombly/Iqbal* muster.

15

## IV.

Accordingly, **IT IS HEREBY ORDERED** that Defendants Correct Care Solutions, LLC, Gerrica Dye, Ona Brown and Sharon Bramel's Motion to Dismiss [Docket No. 14] be **SUSTAINED** and that all claims against these Defendants be **DISMISSED WITH PREJUDICE**.

This 22nd day of June, 2018.

Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge